NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

LOTTIE C. MacINTYRE, PETITIONER, v. PENNSYLVANIA RAILROAD COMPANY, RESPONDENT.

This is a claim coming on for determination under the provisions of the New Jersey Workmen's Compensation act, in which there is no dispute as to the employment or accident, but one in which must be determined whether the accident occurred in connection with interstate or intrastate commerce. At the trial of this case in Camden on November 21st, 1928, the following stipulation was made a part of the record:

"It is hereby stipulated and agreed between the parties hereto as follows:

"That James W. MacIntyre, the decedent, was killed while acting as a conductor in the employ of the Pennsylvania Railroad Company, on the nineteenth day of March, nineteen hundred and twenty-eight. That the accident occurred while the said James W. MacIntyre was coupling an air hose between the tool car and the riding car of the wrecking train, and that the wrecking train was being moved in the Camden yard of the Pennsylvania Railroad Company, by shifting the engine from one end of the train to the other preparatory to moving the said wrecking train from the Camden yard, with its destination the Pavonia yard, all of which movement was entirely within the State of New Jersey.

WADDINGTON & MATHEWS,
*Attorneys of Petitioner.*
BOURGEOIS & COULOMB,
*Attorneys of Respondent.*"

A study of railroad litigations shows plainly that it is often difficult to determine whether a situation is interstate in character or intrastate. The courts are continually reversing one another on this question. An exhaustive study of the decisions seems to indicate that no definite rule can be formulated. Railroading is different from most occupa-

tions in that in, and of, itself it is not an end, but merely a means to an end. To illustrate, one does not ride on a merry-go-round for any other purpose. The ride itself is the accomplished end. Ordinarily, this is not so with regard to a street car. A ride on a street car is a means to an end, to get somewhere. The operators of a railroad do not move engines and shunt cars about merely for the fun of it, or without some purpose behind the movements. This underlying purpose must of necessity determine the character of the operation. I can conceive of no other way of determining it. An engineer is directed to couple onto a car which has just been left on the main line by a passing freight train, and move it on to the siding of the purchaser of the goods contained in the car. Whether or not that is an interstate or an intrastate movement can be determined only by ascertaining whether the point of shipment was within or without the state. Having this information, it can then be decided whether this particular operation was for the purpose of completing an interstate movement. Without a knowledge of the purpose of an operation, the question cannot be answered.

In the case at bar, it is to be noted that the stipulation introduced into the record gives no indication of the purpose making necessary the preparation of the wrecking train for use, and without a knowledge of this underlying purpose I am unable to see how I can find, as a fact, that this particular activity was intrastate in its character. Under the rule, it is incumbent upon the petitioner to show affirmatively that the accident occurred in connection with intrastate commerce before an award can be given. The petitioner's counsel relied on the stipulation quoted above to do this. I am unable to see that it does so, and for this reason it appears that the petition should be dismissed. However, the respondent has presented testimony which may help to clarify the situation.

Briefly stated, this testimony shows that following this unfortunate accident, the wrecking train proceeded to a siding connecting the East Pavonia yard of the respondent company with the Pavonia Ice and Coal Company, where it replaced on the tracks a derailed car, which was preventing the de-

livery of a consignment of coal from Pennsylvania, and also the shipment of empty coal cars from the yard of the coal company back to Pennsylvania. There was no direct testimony that the wrecking crew had received orders, tying up its operations at the exact moment of the accident with the derailed car at Pavonia, but it appears that the wrecking train went directly to Pavonia, and the assumption that the wrecking crew was acting under orders to remove this obstruction to the completion of an interstate movement is reasonable.

According to my understanding of this case, the purpose for which the wrecking train was being prepared for service was the furtherance of interstate commerce, and this underlying purpose determines the character of the employment at the moment of the accident.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

W. E. STUBBS,
*Deputy Commissioner.*